UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CORAN SMITH, | ) |
| Plaintiff, | ) Case No. 12 C 8716 |
| | ) |
| v. | ) Magistrate Judge Sidney I. Schenkier |
| | ) |
| CHICAGO TRANSIT AUTHORITY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[1]

This Court presided over a four-day bench trial on plaintiff Coran Smith's claim that defendant Chicago Transit Authority ("CTA") retaliated against him in violation of Title VII. On March 6, 2015, the Court set forth its findings of fact and conclusions of law and entered judgment in favor of the CTA and against Mr. Smith (doc. # 96). Mr. Smith has filed a notice of appeal from that judgment (doc. # 100).

On March 20, 2015, the CTA timely filed a bill of costs with a supporting memorandum and exhibits seeking payment from Mr. Smith for a total of $4,301.89 (docs. ## 97, 98). Mr. Smith has objected to the CTA's bill of costs on the grounds of indigency (doc. # 107). In addition, Mr. Smith has filed an *in forma pauperis* ("IFP") application and financial affidavit (doc. # 101); a motion for attorney representation (doc. # 110); and an "affidavit accompanying motion for permission to appeal *in forma pauperis*" (doc. # 111). For the reasons set forth below, we grant Mr. Smith's motion to appeal *in forma pauperis*, but deny his motion for attorney representation and deny as moot his motion to proceed *in forma pauperis* in this Court. In

___
[1]On January 11, 2013, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (docs. ## 13, 15).

addition, we grant in part and deny in part the CTA's bill of costs, and award $3,747.56 in costs to the CTA.

### I.

We first address the two pending IFP applications and the motion to appoint counsel. Mr. Smith's first IFP application -- to proceed *in forma pauperis* in this Court (doc. # 101) -- is denied as moot because he has already paid the filing fee in this Court, and the proceedings in this Court -- aside from the instant motions -- have terminated.

We reach a different result with respect to Mr. Smith's motion to appeal *in forma pauperis* (doc. # 111: Pl.'s Mot. to Appeal IFP), which is not moot. "[A]ny court of the United States may authorize the commencement . . . of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such [person] possesses that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). The Federal Rules of Appellate Procedure specify that a party to a district court action may file a motion to appeal *in forma pauperis* in the district court and must attach an affidavit that shows the party's inability to pay and states the issues that the party intends to present on appeal. Fed. R. App. P. 24(a)(1).

In the affidavit accompanying Mr. Smith's application for leave to appeal IFP, he asserts that he has zero total monthly income, including zero public-assistance or unemployment payments (though he also states that he is on welfare, and in his earlier IFP filing, he stated that he received $1,000.00 in food stamps the previous year); that he has been unemployed since April 3, 2012; that he has no cash or assets and has filed for bankruptcy; and that he has no monthly expenses, except for $33.00 a month expense for health insurance (Pl.'s Mot. to Appeal IFP at 2-5). In addition, Mr. Smith asserts that he will spend $245,000.00 for expenses or

attorney fees in connection with this lawsuit (*Id.* at 6). Despite the discrepancy in his affidavit regarding public assistance payments, Mr. Smith's affidavit shows that right now he has no money to pay fees on appeal. Thus, we grant Mr. Smith's motion to proceed IFP on appeal (doc. # 111).

However, we decline to recruit counsel for Mr. Smith. Mr. Smith was represented from the filing of his complaint on October 31, 2012 through trial in February 2015 by attorney Barry Gomberg, and since January 12, 2015, by attorney Mark Steven Schaffner as well (doc. # 71). While there has been no motion to withdraw filed by those attorneys, we surmise that the genesis of Mr. Smith's request that we recruit counsel for him is the unwillingness of those attorneys to continue to represent him in an appeal. In his motion for representation, Mr. Smith asserts that he has been unable to find an attorney because "no one has contacted me back and the one attorney that did doesn't do employment law" (doc. # 110).

"There is no right to court-appointed counsel in federal civil litigation," but a district court has discretion to recruit counsel to represent an indigent plaintiff under 28 U.S.C. § 1915(e)(1). *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)). "If an indigent plaintiff has made a reasonable attempt to obtain counsel and then files a motion for recruitment of counsel, the district court should ask whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 657 (7th Cir. 2014) (internal quotations and citations omitted). In determining whether to use our discretion to recruit counsel, "[w]e examine both the difficulties posed by the particular case and the capabilities of the plaintiff to litigate such a case." *Henderson*, 755 F.3d at 564-65 (internal quotations and citations omitted).

In this case, Mr. Smith has not demonstrated that he has made a "reasonable attempt to obtain counsel." *Dewitt*, 760 F.3d at 657. Mr. Smith's motion provides no detail about the scope and extent of his search for counsel. But even assuming that Mr. Smith had made a reasonable but unsuccessful attempt to obtain counsel, we would not use our discretion to recruit counsel for him. District courts must identify, "among the sea of people lacking counsel, those who need counsel the most." *Henderson*, 755 F.3d at 564. Mr. Smith does not fall into that category with this case. Discovery has been completed, a trial has been conducted, and the Court has issued clear and detailed findings of fact and conclusions of law after four days of trial testimony. The well-developed record will allow Mr. Smith -- a college graduate -- to coherently present his appeal of this Court's decision. Thus, we deny Mr. Smith's motion for attorney representation (doc. # 110).

## II.

In its bill of costs, the CTA requests $2,741.04 fees for transcripts obtained for use in the case, $129.60 in witness fees, and $1,431.25 in fees for exemplification and costs of making copies of materials necessarily obtained for use in the case, for a total of $4,301.89 (doc. # 97: Bill of Costs). Mr. Smith has objected to the bill of costs on the ground that it "would impose a significant and inequitable hardship" on him, as he has filed Chapter 7 bankruptcy "and has no income at this time to pay cost[s]" (doc. # 107: Pl.'s Objections to Bill of Costs).[2]

---

[2]Mr. Smith also objected on the grounds that he has filed an appeal from the final judgment in this case (Pl.'s Objections to Bill of Costs). While the filing of an appeal in some circumstances may be grounds to stay collection on the bill of costs, the mere filing of an appeal generally is not grounds to deny or defer ruling on a bill of costs. *See Dishman v. Cleary*, 279 F.R.D. 460 (N.D. Ill. 2012) ("The Court may award costs while a case is on appeal, and an expeditious ruling on a bill of costs is favored to avoid piecemeal appeals.") (quoting *Collins v. United States*, No. 03 C 2958, 2008 WL 4549303, at *1 (N.D. Ill. Apr. 24, 2008)). Mr. Smith has offered no sound basis here to delay ruling on the bill of costs.

4

## A.

Federal Rule of Civil Procedure 54(d)(1) states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). This rule provides a strong "presumption" that the losing party will pay costs. *Rivera v. City of Chicago*, 469 F.3d 631, 634, 636 (7th Cir. 2006). "The presumption in favor of awarding costs to the prevailing party is difficult to overcome, and the district court's discretion is narrowly confined—the court must award costs unless it states good reasons for denying them." *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 945 (7th Cir. 1997). A court may consider a plaintiff's indigency in denying costs under Rule 54(d), but this exception is a "narrow one." *Rivera*, 469 F.3d at 634, 636.

In considering whether to hold an indigent party liable for costs, we must first make a "threshold factual finding that the losing party is 'incapable of paying the court-imposed costs at this time *or in the future*.'" *Rivera*, 469 F.3d at 635 (quoting *McGill v. Faulkner*, 18 F.3d 456, 460 (7th Cir. 1994)) (emphasis added). "The burden is on the losing party to provide the district court with sufficient documentation to support such a finding," including "evidence in the form of an affidavit or other documentary evidence of both income and assets, as well as a schedule of expenses," that presents "clear proof of the non-prevailing party's dire financial circumstances." *Rivera*, 469 F.3d at 635 (internal quotations and citations omitted). "Second, the district court should consider the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by a case when using its discretion to deny costs. No one factor is determinative, but the district court should provide an explanation for its decision to award or deny costs." *Id.* at 635-36.

5

Here, Mr. Smith has presented no evidence that he will be incapable of paying the court-imposed costs in the future. He represented only that he "has no income *at this time* to pay cost[s]" (Pl.'s Objections to Bill of Costs (emphasis added)). That representation is supported by the affidavit he filed in support of his request for leave to appeal *in forma pauperis* -- which we have granted. But, a current inability to pay does not foreordain an inability to pay in the future.

In *Rivera*, the appeals court vacated the district court's denial of fees based on indigency because the plaintiff did not provide evidence that she will be incapable of paying the defendant's costs "at some point in the future." *Rivera*, 469 F.3d at 636-37. Mr. Smith has substantial income earning potential in the future. He is a young man, thirty-six years old, with sixteen years of schooling, including a college degree (Pl.'s Mot. to Appeal IFP at 4-6). For many years, he held responsible and well-paying positions at the CTA; he earned $21,430.00 total income for little more than three months of work in 2012, the last year in which he worked (*Id.*, 2012 individual income tax return). *See Bhat v. Accenture LLP*, 473 Fed. App'x 504, 507 (7th Cir. 2012) (citing *Rivera*, 469 F.3d at 635) (holding that "even assuming that [the losing party] cannot pay the bill of costs now, the court did not abuse its discretion in concluding that her two masters degrees, management experience, and continuing job search show that she is likely to be gainfully employed—and able to pay $765—in the future").

Mr. Smith's assertion that he has filed a Chapter 7 bankruptcy petition does not change this analysis (*see* Pl.'s Mot. to Appeal IFP at 6). "[W]hen the 'indigent' is a bankrupt, the issue will usually be, as in this case, not whether the bankrupt can pay but whether it should be required to allocate part of its remaining assets to a victorious opponent in litigation rather than to its creditors. We cannot think of any reason to prefer the creditors over the winner of a suit brought on their behalf against him. . . ." *Fehribach v. Ernst & Young LLP*, 493 F.3d 905, 912-13

(7th Cir. 2007). Thus, we find that Mr. Smith has not met his burden of showing that he falls within the narrow indigence exception, and we decline to exercise our discretion to deny costs to CTA.

**B.**

Although we will not deny the CTA costs based on Mr. Smith's alleged indigency, the CTA must still show that the costs it seeks are statutorily recoverable as well as reasonable and necessary. *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 454 (7th Cir. 1998).[3] The Supreme Court has determined that 28 U.S.C. § 1920 defines the term "costs" as it is used in Rule 54(d). *Weeks*, 126 F.3d at 945 (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987)). Section 1920 states that a court may tax the following expenses as costs: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." 28 U.S.C. § 1920. The Court may only award costs that "fall into one of the[se] categories of costs statutorily authorized for reimbursement." *Perry v. City of Chicago*, No. 08-4730, 2011 WL 612342, at *1 (N.D. Ill. Feb. 15, 2011) (quoting *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000)).

---

[3]In his objections to the CTA's bill of costs, Mr. Smith did not challenge any individual costs sought. However, we decline to find that Mr. Smith waived any challenge to the particular costs the CTA seeks because he filed his objections *pro se*, after his trial attorney apparently ceased his representation, and we are obligated to give a "liberal construction" to a *pro se* plaintiff's filings. *See Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) (holding that the *pro se* non-moving party did not waive arguments in his response to the moving party's motion for summary judgment, because with a liberal construction of his pleadings it was possible to see that he asserted the arguments) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). We thus will interpret Mr. Smith's objection to the bill of costs to include not just a request that it be denied in its entirety due to his indigency, but also a challenge to the particular items and amount of costs sought.

7

The costs taxed by the district court must be "reasonable and necessary for the defense of the action." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005). The Seventh Circuit has explained that in determining whether expenditures were reasonable and necessary, we must consider "how things seemed when the expenditures were made, without the benefit of hindsight." *Nat'l Org. for Women, Inc. v. Scheidler*, 750 F.3d 696, 699 (7th Cir. 2014). Costs incurred merely for the convenience of counsel may not be recovered. *Perry*, 2011 WL 612342, at *1 (citing *Barber v. Ruth*, 7 F.3d 636, 645 (7th Cir. 1993)).

Here, the CTA requests $129.60 in witness fees, $2,741.04 fees for transcripts obtained for use in the case, and $1,431.25 in fees for exemplification and costs of making copies, for a total of $4,301.89 (doc. # 97: Bill of Costs). We address each category of CTA's requested costs below.

### 1.

CTA seeks a total of $129.60 in witness fees and mileage costs pursuant to 28 U.S.C. § 1920(3). Statutorily allowed witness fees are specified in 28 U.S.C. § 1821(b), which states that "[e]xcept as otherwise provided by law, a witness in attendance at any court of the United States . . . or before any person authorized to take his deposition . . . shall be paid the fees and allowances provided by this section." Specifically, "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance [at court]. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance." 28 U.S.C. § 1821(b). Under Section 1821(b), we find CTA's request for a $40.00 attendance fee for their witness Edward Cook, who testified at trial, to be reasonable and necessarily incurred in the case.

CTA also requests $40.00 for a day it spent preparing Mr. Cook for his testimony at trial, and $40.00 for preparation time of witness Larry Wall, who was listed on plaintiff's "may call" list, but who did not appear at trial because he was not called as a witness. We deny that request. As another court in this district recently noted, the statute dictates payment for attendance at court and at depositions, not for preparation for giving testimony. *DSM Desotech, Inc. v. 3D Sys. Corp.*, No. 08-1531, 2013 WL 3168730, at *1-2 (N.D. Ill. June 20, 2013) (citing 28 U.S.C. § 1821); *see also Perry*, 2011 WL 612342, at *3 n.5 (noting that the witness fee described in Section 1821(b) pertains to the attendance of a live witness at trial or a deposition); *Maxwell v. KPMG LLP*, No. 03-3524, 2009 WL 3598474, 2 (N.D. Ill. Oct. 23, 2009) (noting that deposition preparation is not a taxable cost under § 1821(a)(1)); *Fletcher v. Chicago Rail Link, LLC*, No. 06-842, 2007 WL 4557816, at *3 (N.D. Ill. Dec. 20, 2007) (explaining that section 1821 "authorizes only payment of a witness fee of $40 for each day of trial on which the witness testifies, as well as expenses for travel and subsistence"). CTA has not provided any authority to support a contrary definition of witness attendance that includes preparation for trial.

CTA also requests $9.60 in mileage fees, calculated at a rate of 56.5 cents/mile, for Mr. Cook's commute to and from Indiana for the day he spent preparing and the day he spent testifying at trial. According to statute, witnesses shall be paid a travel allowance equal to the federal government's prescribed mileage allowance, 28 U.S.C. § 1821(c)(2), which, as of January 1, 2014, was $0.56/mile, as stated by CTA. http://www.gsa.gov/portal/content/103969. However, because witness fees do not include preparation time, the CTA may not recover costs for the travel expenses incurred by Mr. Cook to prepare for his trial testimony. Accordingly, the

CTA may recover mileage for only one day's commute for Mr. Cook, or $4.76 (half of the requested $9.60 in mileage fees), at the rate of $0.56 per mile.[4]

Thus, the total witness fees and mileage costs CTA may recover is $44.76, a deduction of $84.84, from their request for $129.60.

### 2.

CTA seeks to recover $2,741.04 for the costs of transcripts ordered from Mr. Smith's two-day deposition and his trial testimony (doc. # 98: Mem. in Supp. of Bill of Costs at 3; CTA's Mem., Ex. B). Deposition costs (including transcripts), as well as pretrial and trial transcript costs, are authorized under Section 1920(2). *Weeks*, 126 F.3d at 945. Local Rule 54.1(b) further states that the costs of the transcript or deposition shall not exceed the regular copy rate as established by the Judicial Conference of the United States at the time the transcript or deposition was filed, and court reporter appearance fees may be awarded in addition to the per page limit, but the fees shall not exceed $110 for one half day (4 hours or less), and $220 for a full day attendance fee. L.R. 54.1(b).

At the threshold, we consider whether these transcripts were "reasonably necessary" to the case at the time they were obtained. *Cengr*, 135 F.3d at 455. The introduction of a deposition in a summary judgment motion or at trial is not a prerequisite for finding that it was necessary to take that deposition. *Id.* But, in this case, Mr. Smith's deposition was used both at summary judgment and at trial, and as in *Cengr*, 135 F.3d at 455, it was "entirely reasonable" for the defendant in this case to order the transcripts of the plaintiff's deposition. Likewise, Mr. Smith's trial testimony was obviously "reasonably necessary" to the CTA's defense at trial, including

---

[4] Even though the discrepancy is minor, we see no reason to use the CTA's requested rate of $0.565 per mile as opposed to the prescribed rate of $0.56 per mile.

preparation for closing argument. Thus, we find that the CTA's request for costs for court reporter and transcripts were reasonably necessary for use in this case.

We next consider whether the costs sought are reasonable. The fees charged by the court reporter for a copy of Mr. Smith's deposition transcript -- $2.95 per page -- is below the Judicial Conference's maximum rate of $3.65 per page. http://www.ilnd.uscourts.gov/home/clerksoffice/CLERKS_OFFICE/CrtReporter/trnscrpt.htm (visited on May 4, 2015). Likewise, the fees charged by the official court reporters for a transcript of Mr. Smith's testimony at trial ($520.30 for his testimony during the morning of February 9, 2015, and $786.50 for his testimony that afternoon) -- billed at the maximum daily transcript rate of $6.05 per page -- comply with the Judicial Conference's rules and are thus statutorily allowed. *Id.*

In addition, the court reporter's attendance fees for the first day of Mr. Smith's deposition -- $35.00 per hour for six hours -- fall below the maximum fee allowed by L.R. 54.1(b) for a full day (more than 4 hours) of attendance. Accordingly we find that the CTA may recover the full attendance fee for the first day of Mr. Smith's deposition transcript: $210.00. The costs requested for the second day of Mr. Smith's deposition transcript ($114.24 for 3.25 hours), however, slightly exceed the fee allowed under L.R. 54.1(b), which states that the maximum attendance fee for one half day of the court reporter's time is $110.00. In line with L.R. 54.1(b), we reduce the court reporter's fee for the second day of Mr. Smith's deposition to $110.00.

The total expenses for court reporter and transcripts that CTA may recover as costs are $2,736.80 ($4.24 less than CTA requested).

**3.**

CTA also seeks photocopying costs that it incurred for court filings and discovery at a rate of $0.20 per page of in-house black-and-white copying (Bill of Costs Itemization at 1-3). Initially, we note that per page copy rates between $0.10 and $0.20 are generally considered reasonable in this district. *See Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, No. 11-8449, 2014 WL 2879881, at *3 n.3 (N.D. Ill. June 24, 2014) (collecting cases); *Kaplan v. City of Chicago*, No. 05 C 2001, 2009 WL 1940789 (N.D. Ill. July 6, 2009) (collecting cases); *see also Shanklin Corp. v. Am. Packaging Mach., Inc.*, No. 95-1617, 2006 WL 2054382, at *4 (N.D. Ill. July 18, 2006).

As with transcripts, only fees for copies "necessarily obtained for use in the case" are recoverable. 28 U.S.C. § 1920(4). The phrase "for use in the case" refers to "materials actually prepared for use in presenting evidence to the court." *Perry*, 2011 WL 612342, at *2 (quoting *McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990)). "These materials include 'copies attributable to discovery and copies of pleadings, motions, and memoranda submitted to the court,' not 'copies made solely for the convenience of counsel.'" *Perry*, 2011 WL 612342, at *2 (quoting *Roney v. Illinois Dept. of Transp.*, No. 99-4941, 2007 WL 1100751, at *1 (N.D. Ill. Apr. 12, 2007)). The district court has discretion to determine which copies were necessary." *Montanez v. Simon*, 755 F.3d 547, 558 (7th Cir. 2014) (citing *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000)).

**a.**

CTA provides a list of thirty line items for which it seeks "copying costs for court filings" (Bill of Costs Itemization at 1-3). All except for one of these items seeks the cost of only two copies, a number that we consider reasonable. *See Perry*, 2011 WL 612342, at *2 (noting that

generally, recovery is limited to three sets of copies per document) (citing *Menasha Corp. v. News Am. Mktg. In–Store, Inc.*, 2003 WL 21788989, at *4 (N.D. Ill. July 31, 2003)); *see also Allen v. City of Chicago*, No. 09-243, 2013 WL 1966363, at *4 (N.D. Ill. May 10, 2013) (costs of courtesy copies to the Court are considered necessarily incurred).

The one exception to the CTA's request for the cost of two copies is the CTA's trial exhibit binders, for which the CTA seeks to recover the cost of six copies at a cost of $543.60 (Bill of Costs Itemization at 2). As explained above, courts will not tax costs that are "provided merely for the convenience of the requesting attorney." *Majeske v. City of Chicago*, 218 F.3d 816, 825 (7th Cir. 2000). The CTA provided one copy of the binder for the Court and one copy for plaintiff's attorney. One additional copy for the defense to use for trial witnesses was all that was reasonable and necessary. The additional three copies of the binders were "provided merely for the convenience" of the CTA's attorneys. Accordingly, we will allow the CTA to recover the cost of only three, not six copies of its trial binder, reducing CTA's recoverable costs for the trial exhibit binders in half to $271.80, from its request of $543.60.

CTA also seeks the cost of making two copies of Mr. Smith's complaint with exhibits, for a total of $128.00 (Bill of Costs Itemization at 2). CTA has not shown that these copies were necessarily obtained for use in this case. Section 1920(4) "does not encompass [a party's] copying of court filings for its own use." *McIlveen*, 910 F.2d at 1584. Copies of the plaintiff's complaint and other documents already filed on the docket are not copies of materials CTA "actually prepared for use in presenting evidence to the court." *Wells v. Johnson*, 06-6284, 2012 WL 3245955, at *1 (N.D. Ill. Aug. 6, 2012); *see also Pugh v. Bd. of Educ. of the City of Chicago*, 10-4115, 2012 WL 5199629, at *4 (N.D. Ill. Oct. 22, 2012) (holding that it was not reasonably necessary for the prevailing party to make copies of orders entered by the court or

papers filed by the losing party, and thus, those expenses were not recoverable as costs). Thus, CTA may not recover the $128.00 for making copies of Mr. Smith's complaint.

We also find that copies related to CTA's motions for extensions of time were not "necessarily obtained for use in the case." CTA seeks a total of $4.80 for copying costs related to these motions (Bill of Costs Itemization at 2). Each of these motions, however, was requested due to CTA's failure to meet Court deadlines: (1) on November 19, 2012, CTA requested additional time to file its answers due to lack of funding within the CTA (doc. # 6); (2) on June 7, 2013, CTA requested an extension of time to complete discovery that it was unable to complete due to its own "best efforts" (doc. # 25); (3) on December 9, 2013, CTA requested extra time to file its answer due to other cases its attorneys had to work on (doc. # 42). The Court will not tax these $4.80 in costs to Mr. Smith.

We find the remainder of the copying costs sought by the CTA for court filings (which total $63.00) to be necessary and reasonable (*see* Bill of Costs Itemization at 1-3). Accordingly, out of the total $739.40 in copying costs for court filings requested by the CTA, we subtract $404.60, for a total award to the CTA of $334.80.

**b.**

CTA also seeks $691.85 for the copying costs it incurred during discovery and pretrial motion practice (Bill of Costs Itemization at 3). The bulk of these costs, $631.20, are for two copies of CTA documents produced pursuant to discovery requests and in support of the CTA's motion for summary judgment, and for letters related to plaintiff's interrogatories and production requests (*Id.*). The CTA attached its production log in description of these documents (*Id.*, Ex. 5). As explained above, fees may be recovered for "materials actually prepared for use in presenting evidence to the court," including "copies attributable to discovery and copies of

14

pleadings, motions, and memoranda submitted to the court." *Perry*, 2011 WL 612342, at *2 (internal quotations omitted). We find that these expenses are allowed under Section 1920(4) and, as responses to plaintiff's discovery requests, were necessarily obtained for use in this case.

The remaining $60.65 of these costs more accurately fall under 28 U.S.C. 1920(1), which allows a court to tax the "fees of the clerk and marshal" as costs. This provision enables a prevailing party to recover costs related to service of subpoenas, including using a private process server, as long as those costs do not exceed the fees charged by a marshal. *Baker v. Ghidotti*, No. 11-4197, 2015 WL 1888004, at *7 (N.D. Ill. Apr. 24, 2015); *Fabiyi v. McDonald's Corp.*, No. 11-8085, 2014 WL 2819007, at *2 (N.D. Ill. June 23, 2014). The allowable fee charged by a marshal was $55.00 per hour plus travel costs and out-of-pocket expenses through October 29, 2013, *SP Techs., LLC v. Garmin Int'l, Inc.*, No. 08-3248, 2014 WL 300987, at *3 (N.D. Ill. Jan. 10, 2014), and $65.00 per hour for each item served plus travel and out-of-pocket expenses after that date, 28 C.F.R. § 0.114(a)(3). The rates for which the CTA seeks reimbursement fall within the allowed rates.

However, the CTA merely attaches the receipts for these expenses -- a subpoena to Dr. Brisson, certified mail to Dr. Brisson, and certified mail to plaintiff -- and provides no other explanation for them. "To recover copying costs, a party must provide enough information for the court to determine that the costs are authorized by Section 1920(4)." *Perry*, 2011 WL 612342, at *2. The CTA has not done so here.

In fact, the CTA has not even explained to the Court who Dr. Brisson is, how he or she related to this case, and what documents the CTA sought from Dr. Brisson. Plaintiff's complaint alleged gender discrimination and retaliation. We can speculate that Dr. Brisson was one of plaintiff's doctors, and perhaps his subpoena was related to Mr. Smith's claims in his complaint

15

that he suffered emotional pain and suffering from the alleged discrimination and retaliation (*see* doc. #1: Compl. at pp. 6, 11). However, without any of this information, we cannot determine that these copies were "necessarily obtained for use in the case."

Accordingly, we decline to tax plaintiff for the $60.65 in subpoena, process, and certified mail fees in connection with Dr. Brisson. As a result, we award the CTA $631.20 for this category of cost (a reduction of $60.65 from the $691.85 sought).

## CONCLUSION

For the foregoing reasons, we grant Mr. Smith's motion to proceed *in forma pauperis* on appeal (doc. # 111); we deny as moot his motion to proceed *in forma pauperis* in this Court (doc. # 101); and we deny his motion for attorney representation (doc. # 110). In addition, we grant in part and deny in part the CTA's bill of costs (doc. # 97). We award the CTA a total of $3,747.56 in costs.

**ENTER:**

*/s/ Sidney I. Schenkier*

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATE: May 6, 2015**